**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**TERI SHIMKUS,**

**Plaintiff,**

**v.**

**TARGET CORPORATION,**

**Defendant.**

**Case No 10 C 7066**

**Hon. Harry D. Leinenweber**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Teri Shimkus alleges that Defendant Target Corporation (hereinafter, "Target" or "Defendant") is liable for injuries that she sustained when she slipped on a liquid on the floor of the pet aisle in the Tinley Park, Illinois Target store. This Court has jurisdiction over Plaintiff's state-law premises liability claim because the parties are of diverse citizenship and appear to agree in good faith that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. For the reasons stated herein, Target's motion for summary judgment is granted.

## I. BACKGROUND

Most of the facts in this case are undisputed. On September 27, 2008, Plaintiff Teri Shimkus visited the Target store in Tinley Park, Illinois (7300 W. 191st St., Tinley Park, Illinois). She walked straight to the pet department, looking for a dog collar to exchange for one she already had and potentially a

dog Halloween costume. In pet aisle E-37, she slipped on an unidentified liquid on the floor, which may have been glass cleaner. She did not fall to the ground, but slipped such that her left foot went sole-up behind her and her right shin struck her cart in front of her. The liquid was either light blue or clear, but neither party makes much of the color at this stage.

Target Team Member Trevor Miroslaw ("Miroslaw") testified at deposition that he walked by aisle E-37 on his way to the rear of the store, and noticed no spills or misplaced items as he walked. (As described below, Plaintiff endeavors to dispute this fact.) Miroslaw testified that when he emerged from the rear of the store five to 10 minutes after walking by, Plaintiff hailed him for assistance, having already slipped. He testified that he was able to easily see the spill on his return trip. Miroslaw radioed for assistance, and two supervisors (including Silas Fulcher ("Fulcher")) took over.

The leadership structure in a Target store is convoluted. However, several supervisors evidently shared responsibility on the date in question for ensuring that the Pet Department was clean, well-stocked, and free of hazards. Each current and former Target employee testified that Target policy mandates that every employee moving about on the floor must look for ways to: 1) help customers, 2) re-stock and fix displays, and 3) identify and remedy hazards, including spills. Because the Pet Department is at the

rear of the store where employees must go to obtain re-stock items, employees walk by aisle E-37 at least every 10 to 15 minutes, checking for hazards as they go. There is no employee whose sole responsibility is to patrol for spills.

## II. LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a verdict for the non-movant, and material if it may affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant meets its burden, the non-movant must present facts showing a genuine dispute to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

Courts do not evaluate credibility or decide facts on summary judgment, and construe all facts in favor of the non-movant. *Liberty Lobby,* 477 U.S. at 249; *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009). Courts may draw inferences from the evidence, but need not draw every conceivable inference. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 129 S. Ct. at 2677 (citation omitted).

Illinois business owners owe their customers a duty to exercise reasonable care in maintaining their premises in a reasonably safe condition, but are not the ultimate insurers of customers' safety. *Perminas v. Montgomery Ward & Co.*, 328 N.E.2d 290, 293-94 (Ill. 1975). Proprietors are liable if an invitee is injured by slipping on a foreign substance: a) placed there through the proprietor or his agent's negligence, or b) if there is no evidence as to how the substance appeared, if the proprietor or agent had actual or constructive knowledge of the hazard. *Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 437 (Ill. 1958).

A lesser-used formulation of Illinois' constructive notice standard makes proprietors liable if the hazard was part of a pattern of recurring incidents or practices. *Compare, e.g., Tomczak v. Planetsphere, Inc.*, 735 N.E.2d 662, 667 (Ill. App. Ct. 2000) *and Nicholson v. St. Anne Lanes, Inc.*, 483 N.E.2d 291, 294-95 (Ill. App. Ct. 1985). Courts have variously described where this pattern-or-practice theory fits into Illinois tort liability. *See, e.g., Nicholson* 735 N.E.2d at 667 (treating it as a species of constructive notice); *Perminas v. Montgomery Ward & Co.*, 306 N.E.2d 750 (Ill. App. Ct. 1973) (noting that in recurring incident cases plaintiff need prove neither actual nor constructive notice), *rev'd on other grounds,* 328 N.E.2d 290 (Ill. 1975). However, the Seventh Circuit has treated recurring incident cases as a species of

constructive notice, *see Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988), and this Court follows accordingly.

## III. DISCUSSION

Defendant moves for summary judgment solely on the ground that there is no evidence that any Target employee placed the liquid on the floor, and that Target had no notice (actual or constructive) of the liquid's presence before the incident. Plaintiff concedes that there is no evidence that any Target employee caused the spill or actually knew about it before Plaintiff slipped. Pl.'s Resp. to Def.'s Rule 56.1 Statement, at ¶¶ 50, 51. The only remaining avenue of liability is thus constructive notice.

As noted above, the Seventh Circuit has acknowledged two ways to prove constructive notice under Illinois premises liability law. A plaintiff can show: a) that a foreign substance was on the floor long enough that a reasonably careful proprietor would have discovered it (traditional constructive notice), or b) that the spill was part of a dangerous pattern.

### A. Traditional Constructive Notice

By focusing on the recurring-incidents theory, Plaintiff appears to concede for the purposes of this motion that there is no evidence that the liquid was on the floor long enough for Defendant to have constructive notice of its presence.

The Court agrees that Plaintiff has not created a triable issue as to how long the liquid was present – indeed, Plaintiff has

presented no evidence on that point. Pl.'s Resp. to Def.'s Rule 56.1 Statement, at ¶ 52. *Cf. Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 125 (7th Cir. 1988). Plaintiff likewise admits that Miroslaw testified to walking by aisle E-37 five to 10 minutes before the accident without seeing the spill. Plaintiff disputes the veracity of that statement, however, because Miroslaw's failed to mention it in his post-incident report. Given the report's prompts and the spare manner in which the other sample reports given to the Court were filled out, the Court has some doubt as to whether the omission creates a triable issue of disputed fact. Even assuming that it does, however, the fact is immaterial; where Plaintiff can present no evidence as to how long the liquid was on the floor, summary judgment is appropriate. *Culli*, 862 F.2d at 125.

In any event, Plaintiff admits that Target employees including Fulcher and Miroslaw would have walked past the pet aisle at least every 10 to 15 minutes on the date of the incident, looking, *inter alia*, for unsafe conditions. *See* Pl.'s Resp. to Def.'s Rule 56.1 Statement, at ¶ 49. Furthermore, although the accident occurred on a Saturday, Target's busiest day, there is no evidence that the store – particularly the Pet Department – was so busy at the time of the accident that close patrolling was necessary. *See Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001) ("[e]mployees have frequent occasion to be in the store's

aisles . . . They have only to be alert to the possibility of spillage to notice it and clean it up promptly.”). Accordingly, the evidence here cannot establish constructive notice based on how long the liquid was present on the floor. *See Reid v. Kohl’s Dept. Stores*, Inc., 545 F.3d 479, 482-83 (7th Cir. 2008); *Hresil v. Sears, Roebuck & Co.*, 403 N.E.2d 678, 679-80 (Ill. App. Ct. 1980). Thus, even if Plaintiff did not properly concede the issue, Defendant would be entitled to summary judgment under this theory.

**B. Pattern or Practice Constructive Notice**

Unsurprisingly, the parties agree that Illinois law provides for pattern-or-practice constructive notice, but disagree on whether Plaintiff’s evidence satisfies that test. A number of the leading state cases appear to define the relevant pattern narrowly. *See, e.g., Swartz v. Sears, Roebuck and Co.*, 636 N.E.2d 642, 655 (Ill. App. Ct. 1993) (special proof of notice is not required “where defendant knew of prior occasions where the same type of substance was present on the floor creating a potentially dangerous situation”); *Dunlap v. Marshall Field & Co.*, 327 N.E.2d 16, 19-20 (Ill. App. Ct. 1975) (where plaintiff tripped on a discarded lollipop stick, repeated incident theory failed for lack of proof that eating lollipops and improperly discarding waste was a recurring problem in the store). The Seventh Circuit, however, has emphasized that the important pattern is negligence, not particular spills; “[w]hat is needed is a pattern of dangerous conditions

which were not attended to within a reasonable period of time." *Culli*, 862 F.2d at 126. The Court concludes that Plaintiff has not presented sufficient evidence to create a triable question as to Target's alleged pattern of negligently responding to spills.

Plaintiff has presented substantial evidence that spills at Target stores are fairly common. It is undisputed, for example, that each current or former Target employee in this case was trained and coached on how to clean spills, and the importance of doing so. Each testified that Target had a policy of requiring every employee to watch out for spills and misplaced items as they move throughout the store. Finally, Miroslaw testified that he saw at least two spills during his training period.

However, the fact that spills are common at Target is both unsurprising (in light of its business) and insufficient to demonstrate notice under *Culli*. *Culli* requires a pattern or practice of *inadequate responses* to such spills. Acknowledging this disconnect, Plaintiff argues that Target's awareness that spills would frequently occur, in conjunction with the number of slip and fall incidents at the Tinley Park Target in the three years before this incident, demonstrates "a recurrent condition that Target took no measures to rectify or prevent. Under the case law this is sufficient to establish constructive notice." Pl.'s Resp. to Def.'s Mot. for Summ. J., 7.

Plaintiff points to more than 25 incident reports of slips or falls at the Tinley Park Target in the three years before this accident. One involved a patron slipping on an orange peel; the remainder generally involve slips on rainwater, freezer condensation, or (as here) unidentified liquids. No other slip happened in the pet aisle, which is fairly unsurprising given that no liquids seem to be kept there. (Plaintiff disputes that few spills happen in the pet department; however, her cited evidence does not support the denial and the fact is deemed admitted.) Plaintiff argues that an average of almost nine slips per year demonstrates that Target does not adequately address spills and puddles on its floors. However, Plaintiff offers no metric by which to evaluate these numbers and no evidence that those falls were the product of any negligence or inadequate response by Target.

The incident reports are extremely spare, and offer little insight into the surrounding circumstances of the falls. Plaintiff implicitly relies on an inference that every time a patron slips on a foreign substance, Target must have been negligent – otherwise, Plaintiff would not argue that merely showing roughly nine falls per year establishes "a pattern of dangerous conditions which were not attended to within a reasonable period of time." *Culli*, 862 F.2d at 126. However, Illinois law prohibits an inference of negligence merely because an invitee sustained an injury. *Beccue*

*v. Rockford Park Dist.*, 236 N.E.2d 105, 109 (Ill. App. Ct. 1968). Accordingly, without more, this Court cannot assume that all, or even most, of the reported falls involved negligence by Target.

Absent any information to determine how many (if any) of those falls resulted from negligence, or to contextualize the fall rate, this Court cannot conclude that Plaintiff's evidence is sufficient to withstand summary judgment. An indeterminate number of arguably negligent slips on other liquids and in other parts of the store cannot, in this Court's estimation, bring this case within the ambit of the repeated-incident theory of constructive notice. Plaintiff cannot establish that Defendant had actual notice, has presented no evidence as to how long the spill was present, and cannot show repeated negligent handling of spills by Target. This Court thus concludes that Plaintiff can show neither actual nor constructive notice of the hazard, and Defendant is entitled to summary judgment.

In light of the Parties' extensive briefing of the issue, the Court feels compelled to address the relevance of the adequacy of Target's policies regarding spills. Plaintiff argued that, in raising only notice issues, Target waived its opportunity to argue the sufficiency of its cleanup policies on summary judgment. (Indeed, Defendant similarly seems to argue that defending its policies is unnecessary to show lack of notice.) However, *Culli*'s very formulation — a pattern of dangerous conditions not attended

to in a reasonable time — belies this argument. This Court concurs in Judge James Moran's assessment that knowing that frequent spills are inevitable in a facility does not give a defendant instant notice of every spill. *Stadt v. United Center Joint Venture,* Case No. 03 C 3059, 2005 WL 1126539, at *2-3 (N.D. Ill. May 09, 2005). Instead, the constructive notice inquiry by necessity incorporates the reasonableness of the defendant's policy for dealing with such spills. *Id.* This Court has already concluded that Plaintiff did not marshal sufficient evidence to show a pattern of insufficient response to dangerous conditions. However, an inquiry into the reasonableness of Defendant's spill policy is normally not only relevant, but necessary to a constructive notice inquiry under *Culli*.

## IV. CONCLUSION

For the reasons stated herein, the Court concludes that Plaintiff cannot establish that Defendant had actual or constructive notice of the spill on which Plaintiff slipped. Accordingly, the Court grants summary judgment to Defendant on Plaintiff's premises liability claim.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** February 24, 2012